UNIVERSITY OF MINNESOTA *vs.* ST. PAUL & NORTHERN PACIFIC RAILWAY COMPANY and others.

## February 28, 1887.

**Eminent Domain—Injunction against Proceedings by Railway Company—State University Grounds.**—The evidence in this case is not returned, but the findings of fact by the trial court are *held* sufficient to support its legal conclusions that, when the condemnation proceedings set forth in the record were instituted, the land in controversy had not been accepted or acquired by the University, or appropriated for its use, and that the threatened injury to the educational interests of the latter was not such as to warrant the court in restraining by injunction the construction of defendant's line of railroad.

Plaintiff brought this action in the district court for Hennepin county, to restrain the defendant from constructing a railway across lots 4, 5, 6, and 7, in block 13, in St. Anthony city, (now included in East Minneapolis,) or from further prosecuting proceedings, in which commissioners had already been appointed, to condemn a right of way across the same. The complaint alleges that plaintiff is the owner of these lots as well as of lot 8 in the same block, and is also the owner of an adjacent tract of 40 acres, known as the university grounds or *campus*, upon which the university buildings are situate; that all these lands were acquired by purchase or condemnation, pursuant to law, for the use of the university, and are now held by it for that public use, and "are necessary to the maintenance, existence, and proper and efficient management of the said university, as the same is located and established by the constitution and laws of the state." The complaint further states that the plaintiff is not named in the petition in the condemnation proceedings, and was not served with any notice of the intended presentation thereof to the court, though the defendant well knew that plaintiff was the owner of the lands above described. The complaint contains other averments, to the effect that the defendant is not authorized by law to construct the railway for which it is seeking to take the lands; that the railway

can be as advantageously located and built on other lands; and that the construction and operation of the railway on the line in question will prevent the plaintiff from building and maintaining an astronomical observatory which it had located on the only spot on the university grounds available for that purpose, before the defendant began its proceedings.

The action was tried by *Young, Lochren,* and *Koon, JJ.,* and judgment ordered and entered for the defendant, (*Lochren,* J., dissenting,) from which the plaintiff appeals.

In the petition in the condemnation proceedings, John S. Pillsbury, in whom the title to lots 4, 5, 6, and 7 in block 13 appeared of record, (and who was one of the plaintiff's board of regents,) was named as the owner of those lots, was made a party, and was served with notice. And Henry H. Sibley, (another of plaintiff's regents,) in whom the title to certain land in blocks 14 and 15 in Regents' addition was of record, was also made a party and served with notice as owner of that land. The state appeared in the proceedings, and answered in respect to all these lands, claiming that they belonged to the university. The answer and the petitioner's reply were in evidence in this case, and the substance of the answer, and of the proceedings thereon in the district court and in this court, will be found in the report of *In re St. Paul & Northern Pacific Ry. Co.,* 34 Minn. 227, (25 N. W. Rep. 345.)

*Gilfillan, Belden & Willard,* for appellant.

*D. A. Secombe,* for respondent.

VANDERBURGH, J. The only substantial grounds upon which a claim for the relief sought can be based are (1) that the lots in question had, prior to the condemnation proceedings, been appropriated in behalf of the state for the use of the university; and (2) that the construction of the particular line of railroad in question, for which these lots are so taken, would prove so injurious to the university, whose buildings are located on lands in the vicinity, as to warrant the court in restraining the construction and operation of the road over the proposed line.

These questions were to be determined by the facts found upon the evidence in the case. As the evidence relating to these subjects is

not returned, our inquiry is necessarily limited to the sufficiency of the findings of facts to warrant the legal conclusions.   We are agreed that, upon both of these questions, the findings of the trial court are conclusive.

1. The court finds that, as appears from the records of the regents of the university, the professor of agriculture had recommended "that authority be granted to the executive committee to purchase lots adjoining the horticultural grounds, for the erection of a farm-house and the necessary outbuildings, if it should be thought best to do so." This appears to have been in June, 1882.   The communication was accordingly referred to the executive committee for their action.   This committee was composed of four or five members; and subsequently two of the members of the committee negotiated for and purchased seven lots, viz., lots 1, 2, 3, 4, 5, 7, and 8, in block 13, in St. Anthony city, including the three lots in controversy, at the agreed price of $4,900, and obtained a deed therefor, running to one of them, purporting to convey the same to him, January 21, 1884; and the title thereto still remained in him at the commencement of these condemnation proceedings.   It is further found "that the purchase-money belonged to the university, and the title was taken in the name of one of the two members referred to, by their mutual arrangement," to facilitate the transfer of such portion of said property as might be desirable to sell.   "A verbal report of said purchase was made to the regents, but no action was ever taken thereon."   It also appears "that the professor of agriculture of said university desired to have erected upon lots 4, 5, 6, and 7, of block 13, a cottage for the assistant superintendent of agriculture, and a barn in which to keep two or more horses employed on the *campus*, and for storing tools, etc.; but no action in respect to such matter was ever taken by such regents, so far as appears from the records of their meetings."   The title to lot 6, which the professor desired for a site of the proposed cottage, was not acquired, but is owned by the defendant; "that said regents never made any appropriation of said property other than as above stated, nor has it ever been occupied by plaintiff for any purpose whatever."   There are no other findings of fact upon the question.

v.36m—29

Up to the time of the commencement of the condemnation proceedings, in May, 1885, therefore, it is apparent that the board of regents had taken no action in respect to the purchase or appropriation of the particular property. The recommendation or wishes of the professor of agriculture of itself determined nothing. It does not appear that the executive committee consulted or took any action in the premises. The two members of the committee, who unquestionably acted in the utmost good faith, assumed to make the purchase, the result of which, it is evident, was intended by the purchaser to be for the benefit of the university, whether it should eventually be found desirable for the regents to accept it, and take the title thereto, or that it should be sold by the grantee, as, while the matter remained thus *in statu quo* and undetermined, it undoubtedly could be. But conceding that it was for the interest of the regents to ratify, and that by their silence they are to be deemed to have consented to, the plans and arrangements of these parties as far as they had proceeded, the supposed ratification could, of course, extend no further, and the matter was simply left in their hands. It does not appear that it was at any time determined by the regents to acquire the title, or to select or appropriate any part of the property for the university. Had such determination been made, doubtless some action would have been taken to have the title conveyed to the state, or the plaintiff, as its nominal trustee. The recommendation of the agricultural professor for additional ground, which had been made by him several years before the condemnation proceedings, for some cause does not seem to have been pursued any further. One of the lots desired was not obtained, and it does not appear that the board ever took any action indicating that the property was desired or required for the use of the university for the purposes recommended by the agricultural professor, or any other.

The person holding the legal title, as well as the state, was made a party to the condemnation proceedings. The attorney general appeared and answered, setting up the claim of the university to the premises, and there is no reason to doubt that the rights of the plaintiff were fully represented and protected; and, upon the record of the state of the title, we think the court was warranted in refusing the

plaintiff's motion for specific findings touching the fact of notice to the defendant of the plaintiff's interest in the premises, for the purpose of showing the necessity of its being formally added as a party to the condemnation proceedings.  It would not, in any event, by itself, constitute a meritorious ground for an injunction to stay the prosecution of the improvement by the railway company.  If the university had acquired the title, or the property had been authoritatively purchased and held for its use, doubtless these lots would not have been subject to condemnation proceedings.  The case of lands or lots held for sale under legislative authority presents an entirely different question.

2. The trial court were also of the opinion that the injury to the plaintiff caused by the operation of trains on defendant's road is not likely to prove so serious as to warrant the interference of the court by injunction.  It is difficult to see how this court, under the findings of fact, could come to any different legal conclusion.  The evidence not being here, we cannot assume that other or different findings of fact should have been made.  The disturbance likely to be occasioned to the educational work of the university by the noise and jar of trains upon defendant's road, which is laid in a cut thirty feet deep, and separated by a street from the *campus*, and from 600 to 800 feet from the present university building, is, by comparison, found by the court to be little, if any, more than that occasioned by the passing and repassing of loaded wagons over the ordinary streets of a city.  How far away a railroad should be removed, in order to avoid all interference with astronomical instruments or observations, does not appear, but it is found, in substance, that, for all practical purposes for instruction in the university, no substantial inconvenience will result to its educational interests, or in the practical use of an observatory upon the university *campus*, from the operation of the defendant's line of road, or even that of another railroad which runs still nearer the university buildings.

Judgment affirmed.