## INDEPENDENT SCHOOL DISTRICT OF VIRGINIA v. STATE.[1]

January 9, 1914.

Nos. 18,253—(27).

**Eminent domain — appropriation of state land.**

1. State lands are not subject to appropriation in condemnation proceed-

[1] Reported in 144 N. W. 960.

---

Note.—Upon the power to take, by the exercise of the right of eminent domain, property already devoted to a public use by a political or governmental agency, see note in 37 L.R.A.(N.S.) 101.

ings, except when the right to so acquire them is expressly or by necessary implication granted by the legislature.

**Act construed.**

2. Chapter 53, Laws 1872 (section 2606, G. S. 1894), construed and *held* to grant, by necessary implication, the right to acquire such lands for other public purposes, and the right so granted was carried forward in the statutory revision of 1905, and thereby in effect extended to all corporations entitled to exercise the right of eminent domain, including school districts.

**Appropriation of school land.**

3. Under chapter 258, Laws 1913, a duly-organized school district of the state may thus acquire an interest in and to a tract of state school land for the educational purposes, namely, experimentation and instruction in agriculture, provided for by that statute.

**Constitution not violated.**

4. Rights acquired in such condemnation proceedings are equivalent to and answer every purpose of a public sale, and the statutes, which by implication grant the right, are not in violation of article 8, § 2, of the Constitution.

The Independent School District of Virginia petitioned the district court for St. Louis county for an order adjudging that petitioner was entitled to condemn the land described in the petition, for the purpose of instruction, experimentation and demonstration in agriculture; for the appointment of commissioners to ascertain and appraise the damages occasioned by such taking and the compensation to be made to the owners and others interested in the real estate.

Notice having been given of the time and place of hearing, the state of Minnesota appeared specially and moved to set aside the attempted service upon it of the notice of hearing and to dismiss the proceedings, in so far as the state was concerned, on the grounds: (1) That the court had no jurisdiction in the premises, because the state was immune from suit without its consent, and the proceeding was an attempted suit against it brought without its consent, no permission having been granted for the bringing of it either by the legislature or by any other authorized authority; (2) that the court was without jurisdiction because the proceeding was an action at law wherein an attempt was made by an unauthorized political subdivision of the sovereign state, to-wit: An independent school dis-

trict, to take from the state without its consent public property by proceedings in eminent domain; (3) that the court was without jurisdiction, because the right did not exist in the applicant to take other than private property by proceedings in eminent domain; (4) that the court was without jurisdiction, because the proceeding was one attempting to take from the state certain of its school lands and thereby, contrary to the provisions of the state Constitution, effect the sale thereof otherwise than at public sale. The matter was heard before Dancer, J., who denied the motion to dismiss the proceedings as to the state. From the order denying the motion, the state appealed. Affirmed.

*Lyndon A. Smith,* Attorney General, and *Clifford L. Hilton,* Assistant Attorney General, for appellant.

*Arnold & Pickering,* for respondent.

BROWN, C. J.

Proceedings under the authority conferred by chapter 258, p. 355, Laws 1913, to condemn a tract of state school land for the use and benefit of Independent School District of the city of Virginia, this state, for instruction and experimentation in agriculture. The land so sought to be taken being the property of the state, notice of the proceeding was served upon the attorney general as required by section 2524, R. L. 1905. The attorney general appeared at the hearing and moved for a dismissal on the ground, among others, that the school lands of the state are not subject to condemnation for the purpose stated or otherwise, that the proceeding is one to acquire rights in such lands contrary to the provisions of the state Constitution, to the effect that no state school lands shall be sold otherwise than at public sale, (section 2, art. 8, Const.) and, therefore, that the court is without jurisdiction to entertain the proceeding. The motion was denied and the state appealed.

1. We come directly to the principal question in issue, namely, whether a tract of state school land is subject to appropriation for educational purposes by a duly-organized school district in condemnation proceedings under chapter 258, Laws 1913, for all other

124 M.—18.

incidental questions are necessarily determined by a decision of that question.

2. The generally accepted doctrine of practically all of the courts is that the public lands of the state may be taken under the power of eminent domain only when authority to do so is expressly or by necessary implication granted by the legislature. The rule is particularly applicable to lands owned and in actual use by the state, or by some of its municipal subdivisions. It is also settled law that a general grant of the right of condemnation does not include state property, whether in actual use or not, or whether held in its proprietory or other capacity, unless the state is expressly mentioned therein. State v. Boone County, 78 Neb. 271, 110 N. W. 629, 15 Ann. Cas. 487, and note. It is further settled that the municipalities of a state, including cities, villages, towns, counties and school districts, have no inherent power of eminent domain and can exercise it only upon express or implied legislative grant. 15 Cyc. 568. In this state the power has been conferred upon the municipalities named, and the purposes for which the power is here sought to be exercised is granted to school districts by chapter 258, supra. But our examination of the various pertinent statutes has brought to light no provision expressly exposing state lands to appropriation in this manner. And our first inquiry is whether it has been granted by necessary implication. If so the absence of the express grant becomes unimportant.

It is clear that no such implied grant can be spelled out of any of the statutes of the state enacted prior to 1872. But the legislature of that year apparently recognized the right as an existing one, and by necessary implication it was granted by section 15 of chapter 53 of the laws of that year. That statute was amendatory of the then existing statutes granting the general power of eminent domain to certain public service corporations and prescribing the procedure thereof, and the amendment, among other things, provided, in respect to the notice of hearing that, "in cases where the enterprise shall be located through or upon school or University lands, or any other lands belonging to this state, such notice shall be served upon the secretary of state or his assistant, and the commissioners shall

award damages to the state, in like manner as to private persons or corporations."

By this enactment, which is found unchanged in 2606, G. S. 1894, the legislature appreciated the fact that it might in particular instances be necessary to take state lands for some other public use, and for the purpose of protecting its rights in such a case required that the notice of the proceeding be served upon the secretary of state; and by the requirement that the commissioners assess damages to it in the same manner as to persons and corporations, not only recognized the right as of one of probable necessity, but by necessary implication granted the same.

The statute was in effect so construed in In re St. Paul & N. P. Ry. Co. 34 Minn. 227, 25 N. W. 345, where the amended statute was cited in support of the decision that university lands might be condemned for railroad purposes. The court held that since the land there involved was not used for the purposes of the University it was liable "to be appropriated in same manner as lands of private persons." The distinction between used and unused state land was further emphasized in University of Minnesota v. St. Paul & N. P. Ry. Co. 36 Minn. 447, 31 N. W. 936. The distinction is in accord with the general doctrine that land already devoted to a public use cannot in proceedings in eminent domain, without express or implied grant, be taken for another and inconsistent public use. So that in the light of the act of 1872 and its application in the decisions referred to, the conclusion necessarily follows, as we view the question, that the right of condemnation of state land was granted by that statute by necessary implication. We so hold.

3. However, this does not solve the whole question, for the right so granted extended at the time only to railroad and other corporations entitled under title 1 of chapter 34, General Statutes, to take private property in condemnation proceedings, for it was an amendment of and had reference to that statute only. A separate condemnation proceeding was provided in nearly all other instances where the power was granted, and this is true as to school districts. Section 6, et seq., chapter 36, G. S. 1878, and section 3653, et seq., G. S. 1894. But those statutes were all repealed by the general re-

vision of 1905, and school districts, and other municipal corporations having no special charter provisions on the subject, were required to proceed under the general eminent domain provisions by the revised laws, the same being chapter 41. The revision embodied the substance of the act of 1872, and thus carried forward the implied consent to appropriate state lands to other public purposes. While some change in the language was made by the revision commission, there was evidently no purpose to change the law in point of substance. As adopted by the revision the statute still required the state to be served with notice, and that damages be assessed to it for lands taken in such proceedings. This requirement was not expressed in the new law in the language of the old, but the provision that all land taken be assessed to the owner necessarily includes the state where its lands are involved. It is manifest, therefore, that the revision commission intended to retain the old law in its substance, and it follows as a necessary consequence that the implied right to take state lands was carried forward and extended to all condemnation proceedings.

4. No special significance is to be given to the words "private property," as found in the eminent domain statute, section 2520, R. L. 1905. Though the implied consent to take state lands is contained therein, the several sections of that chapter were intended as a statute of procedure in all condemnation proceedings, and not as one granting the right of eminent domain. In other words, the general power is not there granted, but the exercise thereof when granted by other statutes is controlled by the procedure therein set forth. The old statute embodied both a grant of power and the mode of its exercise. These were separated by the revision. The power in the case of school districts is found in other statutes and, as there granted, no limitations as to the character of the property that may be thus taken are made. The appearance of the words "private property" in the revised laws is therefore of no special importance.

5. Though there is force in the suggestion of the attorney general that a distinction might well be made between land held by the state in its proprietory capacity, and that held in trust for educational purposes, the distinction was not made in the University case, and

we are not disposed to change the rule of that decision, since for many years the legislature has permitted it to stand as an expression of the law of the state upon the subject. Nor does chapter 73, p. 121, Laws 1878, since carried forward in other editions and revisions of the general statutes, by which the right of way was expressly granted to railroad companies over school and other state lands, affect the question. That was an express grant of the right of way, and not the power to condemn. The statute was not referred to in the University case.

6. The state further contends that the constitutional provision that no school land held by the state shall be disposed of otherwise than at public sale, precludes the right of condemnation, and renders invalid any statute which may expressly or by implication grant the right, except as authorized by section 4 of article 10 of the Constitution, if that be construed as applicable to state lands, for the reason that such a proceeding does not amount to a public sale. This presents the most serious question in the case. We have given it careful consideration and decide it adversely to the state's contention. In respect to the method of sale school and university lands stand upon the same basis, for, as to the latter, the statutes fully provide for and restrict the manner and method of their disposal, and the requirements in that behalf are of equal force with the constitutional provisions as to the disposal of school land. Substantially the same question was presented in the case of University of Minnesota v. St. Paul & N. P. Ry. Co. 36 Minn. 447, 31 N. W. 936, and the contention of the state was not sustained. The court there differentiated between state lands in actual use and those not in use and subject to sale, holding, as to the latter, that they might be appropriated in condemnation proceedings.

We follow and apply that decision, for it seems clear that a disposal of state lands in condemnation proceedings, where the value thereof is appraised and paid substantially as in the case of a public sale, is equivalent to a sale of that character and answers every purpose of the Constitution. Every right of the state, intended to be protected by the Constitution, is as fully protected in one as in the other mode of disposal. No greater rights can be acquired in the

condemnation proceeding than under a sale by the state auditor. All mineral rights must be reserved to the state, (section 5304, G. S. 1913) and under section 5404, G. S.,1913, this and other reasonable conditions may be imposed upon rights thus acquired. So that every interest that the state may have or assert is safeguarded as fully as upon an appraisement and sale under the general laws. In the case at bar the land in question is being taken for educational purposes, the purpose for which it was granted to the state by the Federal government. Its value as determined by the condemnation commissioners, or by the court on appeal, must be paid by the school district, and the amount thereof becomes a part of the general school fund, the income from which inures to the benefit of all school districts of the state. The result of which is that no special privilege is acquired or gained by this particular school district over other districts.

The obvious purpose of the constitutional restriction that "no portion of said lands shall be sold otherwise than at public sale," was to prevent private sales; and effectually to preclude secret transactions with speculators. In other words, the intention was to surround the disposal of the lands with publicity, thus avoiding private or secret dealings, which often result disastrously to the best interests of the state. And a reading of all the provisions of the section of the Constitution in which this restriction is found tends to the conclusion that it was contemplated that title to such lands might be acquired otherwise than at public outcry, for it is therein provided that the proceeds of the sales "or other disposition" shall become a perpetual fund for the benefit of the schools of the state. While this clause cannot be said to have been included in the Constitution with a view to possible condemnation proceedings, it can be said that it was in the mind of the framers of the instrument that the lands, or some of them, might be disposed of in the due course of law otherwise than at public auction. And we think that so long as the disposal is attended with publicity and in conformity with the requirements of the law in respect to the particular proceedings in which the title is sought to be acquired, the spirit, if not the letter, of the Constitution is complied with and not violated.

The view that neither the constitutional provisions referred to nor the statutes regulating the manner and method of the sale preclude the right of condemnation is sustained by the courts of Washington and Idaho. Hollister v. State, 9 Idaho, 8, 71 Pac. 541; Roberts v. Seattle, 63 Wash. 573, 116 Pac. 25. The Constitution of the state of Washington is substantially the same as that of this state, upon this subject, in that it provides that state lands shall be disposed of only at public sale. It was held in the case cited that a statute expressly providing for condemnation of state school land was not a violation of the Constitution for the reason, as expressed in the opinion, "that condemnation had all the elements of a public sale." Substantially the same situation was presented in the Idaho case, with the same result.

This covers all that need be said and the conclusion reached disposes of all questions raised. And for the reasons stated we hold that under chapter 258, p. 355, Laws 1913, the tract of land in question may be acquired by respondent school district for the educational purposes there prescribed.

Order affirmed.