STATE, BY DOUGLAS M. HEAD, ATTORNEY
GENERAL, v. HAROLD C. CHRISTOPHER
AND OTHERS.
MINNEAPOLIS PARK BOARD, APPELLANT.*

170 N. W. (2d) 95.

August 1, 1969—No. 41355.

*Certiorari denied, —— U. S. ——, 90 S. Ct. 570, 24 L. ed. (2d) 502.

*Edward J. Gearty, Popham, Haik, Schnobrich, Kaufman & Doty, Raymond A. Haik,* and *Robert A. Minish,* for appellant.

*Douglas M. Head,* Attorney General, *Norman R. Carpenter,* Chief Deputy Attorney General, and *James M. Kelley,* Special Assistant Attorney General, for respondent.

*Peterson & Popovich,* for Minnesota School Boards Association, amicus curiae.

*Friedell, Share & Solomon* and *Robert G. Share,* for Sierra Club, amicus curiae.

MURPHY, JUSTICE.

This matter is before us on discretionary review of a district court order granting the State of Minnesota's petition to condemn certain park property located in the city of Minneapolis for trunk highway purposes. Rule 105, Rules of Civil Appellate Procedure. The court found that the proposed taking appeared necessary and was authorized by law and appointed commissioners to ascertain and report the damage resulting from the taking. The question for review, expressed in the petition of the Minneapolis Park Board, is as follows:

"The principal legal question involved in this proceeding is whether the condemnation of 22.22 acres of Minnehaha Park land for highway purposes is authorized by law and is reason-

able and necessary when such lands are devoted to public use for park purposes and when a feasible alternate route is available that will not require the taking of 22.22 acres of park lands. * * * The position of the Minneapolis Park Board is that such action is unreasonable, is not authorized under State law and is contrary to the requirements of federal law regulating the design, location and construction of highways forming a part of the federal aid highway system. Where the land to be taken is park land already devoted to another public use and where an alternative route exists, there is no authority to condemn the public park land for highway purposes."

It appears from the record that the state seeks to condemn land within Minnehaha State Park[1] in the city of Minneapolis for trunk highway purposes to serve in moving traffic between the central business district of Minneapolis and the south and southeast area of the city, adjacent suburbs, and Minneapolis-St. Paul International Airport. The need for the thoroughfare is not disputed, but the park board, a separate municipal department, wants the state to route the highway around the park so as to avoid "a major intrusion * * * [which] would dominate the park visually, would make a slice through it which could not be healed by any park materials or methods, and would, in effect, separate the two portions of the park and destroy the atmosphere of the park."

It should be noted at the outset that if the improvement is to be established, intrusion upon park property is unavoidable since the city of Minneapolis, particularly the southern part, is ringed with parks and boulevards. In particular the park board complains that the proposed route would isolate points of historic and scenic interest from the bulk of the park. A landscape architect stated that to introduce a major traffic artery at the

---

[1]Despite its name, the park is not a state park. It is owned by the city of Minneapolis.

proposed point would destroy the esthetics of the area and would deprive it of its pastoral character. He also asserted that the improvement would blight the area "by noise of autos and trucks and buses, by smells of exhaust, by the dirt which traffic creates." The route that the state has chosen generally follows Hiawatha Avenue, a long-established and well-used thoroughfare, so that the existing right-of-way will be utilized to the maximum extent. The proposed highway, however, would be built up in portions and elevated in others because of the high water table in the park area. The park board was advised of the plan at a meeting on January 4, 1967, and shortly thereafter registered its dissatisfaction and suggested alternate routes, including a tunnel through the area. The highway department did in fact consider alternate routes, including the tunnel plan, and rejected them as being impractical or unrealistically expensive.[2] The state decided that its original plan was the most practical and the most feasible.

■ It seems to us that appellant has overlooked the well-established fact that the power of eminent domain is an inherent

---

[2]The following is a brief summary of the alternate routes considered in terms of construction costs, the number of structures which it would be necessary to take, and the acreage of park land required:

| "Alternate Number | Construction* Cost | Building Required | Park Area Required |
|---|---|---|---|
| "1 (State's Initial Plan) | 2,350,000 | 70 Residential 9 Commercial | 20.2 Acres** |
| 2 (Park Board Plan) | 3,060,000 | 246 Residential 16 Commercial | 2.7 Acres |
| 3 (Tunnel Plan) | 13,280,000 | 82 Residential 9 Commercial | 19.2 Acres*** |

"*Excluding right-of-way cost.
"**Including 10.8 acres of the narrow portion of the park, south of 42nd Avenue which is adjacent to the railroad and of which 6.2 acres are presently covered by a Northern States Power Company easement.
"***Includes 9.4 acres over the tunnel construction which could be restored to park use."

attribute of sovereignty. Winona & St. Peter Ry. Co. v. Waldron, 11 Minn. 392 (515); United States v. Federal Land Bank of St. Paul (8 Cir.) 127 F. (2d) 505; Re Ohio Turnpike Comm. 164 Ohio St. 377, 131 N. E. (2d) 397; State, by Burnquist, v. Flach, 213 Minn. 353, 6 N. W. (2d) 805; State, by Peterson, v. Severson, 194 Minn. 644, 261 N. W. 469. The power of eminent domain is exercised through legislative authority, and its foundation rests upon public necessity. The legislature has vested the commissioner of highways with broad authority. Minn. St. 161.20(2). He acts in the stead of the legislature in highway matters and exercises under constitutionally limited authority the inherent power of the sovereign. The enabling statutes, §§ 117.20 and 161.20, merely set forth procedure designed to insure observance of the constitutional limits on the otherwise unrestricted power of eminent domain. State, by Peterson, v. Severson, *supra*. We have held that §§ 160.08(4) and 161.20 embody a legislative intention to delegate to the commissioner of highways—

"* * * 'plenary and final power * * * in all that relates to the location, construction, and maintenance of the trunk highway system in order to obtain the best results.' Subject only to the requirement that he not act arbitrarily and capriciously, it is for the highway commissioner to say what land is necessary to the establishment and maintenance of the highway system." The Kelmar Corp. v. District Court, 269 Minn. 137, 141, 130 N. W. (2d) 228, 231, citing State, by Hilton, v. Voll, 155 Minn. 72, 75, 192 N. W. 188, 189.

In State, by Mondale, v. Ohman, 263 Minn. 115, 119, 116 N. W. (2d) 101, 104, we said:

"Several principles well established and applicable in condemnation proceedings must govern determination of the questions raised. It is well settled by virtue of Minn. St. 161.20 that the commissioner of highways has been vested by the legislature with the authority to designate and acquire through condemnation proceedings lands needed for trunk highway pur-

poses, State, by Hilton, v. Voll, 155 Minn. 72, 192 N. W. 188; Burnquist v. Cook, 220 Minn. 48, 19 N. W. (2d) 394; that in so acting, he is acting for the state in its sovereign capacity, State, by Burnquist, v. Flach, 213 Minn. 353, 6 N. W. (2d) 805; that such authority includes the right to take from adjacent landowners their right of access to trunk highways in the interests of safety and convenience, § 160.08, subd. 4; Burnquist v. Cook, *supra;* Underwood v. Town Board of Empire, 217 Minn. 385, 14 N. W. (2d) 459; and that the courts may not interfere with the determination of the commissioner of highways, acting for the state in its sovereign capacity, if his determinations have a reasonable basis and are not arbitrary, capricious, or discriminatory. State, by Peterson, v. Severson, 194 Minn. 644, 261 N. W. 469; see, Packard v. County of Otter Tail, 174 Minn. 347, 219 N. W. 289."

■ We assume that appellant would concede the valid application of the foregoing authorities were it not for the fact that, in the case before us, the state proposes to condemn land already devoted to a public use. Appellant contends that where land has been devoted to a public use it may be condemned for another public purpose only when expressly authorized by law or authorized by necessary implication of the controlling statute. Appellant relies upon authorities which apply to condemnors in the lower echelons of entities having the right of eminent domain. Minnesota Power & Light Co. v. State, 177 Minn. 343, 225 N. W. 164; Independent School Dist. v. State, 124 Minn. 271, 144 N. W. 960; Minneapolis & St. L. Ry. Co. v. Village of Hartland, 85 Minn. 76, 88 N. W. 423; University of Minnesota v. St. Paul & N. P. Ry. Co. 36 Minn. 447, 31 N. W. 936. These authorities may be disposed of by noting that not all condemnors in the hierarchy of entities having the power of eminent domain enjoy the same rights and powers. The powers of the state are preeminent because of the state's sovereign authority. It is not correct to equate the sovereign right of the state to condemn land for a public purpose with rights of lesser subdivisions of the gov-

ernment or public or private utility corporations to exercise the right of eminent domain.

Moreover, it may be broadly stated that the rationale of the authorities which hold that public lands of the state may be taken under the power of eminent domain only when authority is expressly, or by necessary implication, granted by the legislature, comprehends that the right should not be exercised where the desired purpose may be accomplished by a slight deviation or change of course. Minnesota Power & Light Co. v. State, *supra*; 1 Nichols, Eminent Domain, § 2.2[1]. As we have already indicated, the objections of the appellant could not be met by a slight deviation in the route proposed by the commissioner since the improvement must necessarily intrude upon park board property. State Highway Comm. v. Union County Park Comm. 89 N. J. Super. 202, 214 A. (2d) 446.

It should be further observed that appellant has overlooked the fact that, in addition to giving broad power to the commissioner of highways by § 161.20 to acquire by eminent domain proceeding "all lands and properties necessary" to the improvement of a highway trunk system, the legislature has, by both express and implied authority, given to the commissioner the right to appropriate lands already devoted to a public use. Minn. St. 160.08, subd. 4, provides:

"Property rights, including rights of access, air, view, and light, may be acquired by said road authorities with respect to both private and public property by purchase, gift, or condemnation."

Minn. St. 160.02, subd. 13, provides in part:

" 'Public property' means any property except streets, roads, or bridges owned by any subdivision of government, including but not limited to, the property of * * * cities * * * and any board or commission * * * thereof * * * ."

The 22.2 acres of Minnehaha Park in issue here clearly fall within this definition and, as such, are subject to acquisition by

condemnation proceedings instituted by the commissioner of highways on behalf of the state.

■ In considering appellant's argument that the commissioner has acted arbitrarily and capriciously, it is only necessary to observe that this claim is not substantiated by the record. The mere suggestion of possible alternatives to the commissioner's proposal does not satisfy the petitioner's burden of establishing arbitrary and capricious action. The comparative desirability and necessity for establishing highway routes should be left to administrative determination rather than judicial finding. We observed in State, by Mondale, v. Ohman, 263 Minn. 115, 120, 116 N. W. (2d) 101, 104:

"Whether a taking by the commissioner of highways is arbitrary or discriminatory ordinarily presents a question of fact for the trial court subject to the same governing principles on appeal as are fact questions in other types of litigation. If there is evidence or reasonable inferences from evidence which give support to the determinations of the finders of fact with respect to this issue this court may not interfere therewith. State, by Hilton, v. Voll, 155 Minn. 72, 192 N. W. 188; see, Housing and Redevelopment Authority v. Minneapolis Metropolitan Co. 259 Minn. 1, 104 N. W. (2d) 864."

We may assume that, in making his determination, the commissioner took into consideration a great many factors, including the utilization of Hiawatha Avenue, cost, neighborhood severance and design, safety factors, and integration of the subject portion of the trunk highway with other segments of the highway system. The review of this deliberative function is severely limited. In Housing & Redevelopment Authority v. Minneapolis Metropolitan Co. 259 Minn. 1, 15, 104 N. W. (2d) 864, 874, we said:

"* * * Courts may interfere only when the Authority's actions are manifestly arbitrary or unreasonable. The acts of an authority vested with legislative determination in a particular

area are manifestly arbitrary or unreasonable where they are taken capriciously, irrationally, and without basis in law or under conditions which do not authorize or permit the exercise of the asserted power. The court is precluded from substituting its own judgment for that of the Authority as to what may be necessary and proper to carry out the purpose of the plan. We do not understand that it is the function of the court to decide between conflicting opinions of the parties as to the advisability of a discretionary act. The question before us is one of the power of the Authority to exercise its judgment in making a determination where the power so to do has been conferred by statute."

■ It should further be noted that by § 161.17, subd. 1, the approval of the proposed improvement is subject to the action of the governing body of the city of Minneapolis. That section provides:

"Except for routes on the interstate system, no portion of the trunk highway system lying within the corporate limits of any city, village, or borough shall be constructed, reconstructed, or improved unless the plans therefor shall be approved by the governing body of the city, village, or borough before such work is commenced, nor shall the grade of such portion of the trunk highway system lying within such corporate limits be changed without the consent of the governing body of the city, village, or borough. This section shall not be construed to limit the power of the commissioner otherwise provided by law to regulate traffic or install traffic control devices or other safety devices on trunk highways located within cities, villages, or boroughs."

It is our impression from the record and oral arguments before this court that the general routing and layout of the improvement was approved August 31, 1962, by the Minneapolis City Council, which thereafter obtained $10 million from a bond issue to enable the city to advance funds for the construction of the highway. It appears that the council's action was intended to obtain an early completion of the project and that everyone agreed upon

242

the proposal until the park board objected to the taking. We are informed by counsel in oral argument, however, that it may well be that the proposed condemnation is still subject to action by the city council and that its disapproval would prevent the improvement. Accordingly, it may well be that future events will render this opinion advisory, and had we known of this circumstance, it is doubtful if the petition for discretionary review would have been granted.

In the context of the record, it is unnecessary for us to consider appellant's additional claim that the proceedings are defective because of the asserted failure of the commissioner to join indispensable parties.

Affirmed.