## A. R. GUILDER *vs.* TOWN OF DAYTON.

### January 28, 1876.

**Power of Legislature over Counties and Towns—Construction of Bridges.**—It is competent for the legislature to determine and enact that a particular bridge, a part of the public highway, shall be constructed in a prescribed manner, and within a fixed expense, by towns and counties within whose territorial limits it will lie when completed, and to determine in what proportions these several towns and counties shall contribute to defray the cost of its construction. Such determination and enactment are an exercise of legislative, and not of judicial, authority.

**Construction of Act in Question—Inability of Commissioners to Serve.**—Application of these principles to Sp. Laws 1870, ch. 100. *Held,* 1. That said chapter makes each of the commissioners therein provided for judge of his own inability to discharge his duties as commissioner, and that his certificate, reciting his inability and appointing a substitute, is conclusive in the premises.

**Same—Acceptance of Bridge by Commissioners is Conclusive on the Towns and Counties.**—2. That the provisions of said chapter make the examination and written acceptance (by the commissioners) of the bridge provided for conclusive upon the towns and counties mentioned—at least in the absence of fraud and mistake.

**Same—Authority of Commissioners merely Ministerial.**—3. That the authority of the commissioners to examine and accept is ministerial rather than judicial.

By Sp. Laws 1870, ch. 100, E. H. Robinson, Neil McNeil, of Hennepin county, and A. Bartlett, of Wright county, are appointed commissioners " for the purpose of

contracting for and superintending the rebuilding of the bridge across Crow river, near its mouth, between the town of Dayton, in the county of Hennepin, and the town of Otsego, in the county of Wright." It is also provided "that if either of said commissioners shall be unable to discharge said duties, he shall have power to substitute some one, at any time, to act in his stead, and the action of such substitute shall be legal and binding, the same as if appointed under this act, and any two of said commissioners shall have power to act in the premises." It is made the duty of the bridge commissioners, and they are given the power, to determine the character and kind of bridge to be built, and to contract for, and generally superintend, its construction, the cost of the bridge not to exceed the sum of $3,000.00, and to be paid by the said towns and counties in the proportion of three-tenths by each of the counties and two-tenths by each of the towns. All contracts made by the commissioners are to be in writing, copies to be filed with the auditors of said counties and the clerks of said towns. The bridge, when completed, is to be examined by the commissioners, " and if done in accordance with the terms of the contract, or contracts, under which the same may be built, (they) shall accept the same by their written acceptance, a copy of which shall be filed with the county auditors and town clerks aforesaid," etc. The act also makes it the duty of the commissioners of the counties and the supervisors of the towns, on proof furnished of the completion and acceptance of the bridge, to issue the orders of their respective counties and towns, in favor of the proper person, for the amount due from their respective counties and towns, according to the provisions of the act, which orders shall be paid by the several county and town treasurers on whom they are drawn.

Soon after the passage of the act, E. H. Robinson, one of the commissioners, by a written instrument, reciting that he was unable, on account of private business, to attend to the

duties of the commission, appointed Gilman N. Clark, of Hennepin county, as bridge commissioner, in his place and stead, and on the same day Clark, in writing, accepted the appointment. The commission, thus constituted, made a written contract with plaintiff, signed by him and by all three commissioners, for the construction of the bridge, for $2,800.00, to be completed on or before June 1, 1870. The plaintiff proceeded to build the bridge, and, on May 6, 1870, a majority of the commissioners accepted it as in accordance with the contract. The plaintiff presented to the supervisors of each of the towns of Dayton and Otsego the certificate signed by McNeil and Clark accepting the bridge, but each board refused to issue the orders of its town, as provided by the act, whereupon plaintiff brought suit against each town for $560.00, its proportion of the contract price. The suit against the town of Otsego, on appeal to this court, is reported, 20 Minn. 74.

At the trial of this action in the district court for Hennepin county, before *Vanderburgh*, J., the defendant objected and excepted, among other things, to the admission in evidence of the written appointment of Clark by Robinson as commissioner, and to the admission of the contract and certificate of acceptance.

The jury found for plaintiff for the full amount claimed, a new trial was refused, and defendant appealed.

*Benton & Benton* and *W. Hammons*, for appellant, contended that the legislature has no power to compel a municipality to incur a debt for a local improvement, citing *People* v. *Mayor, etc., of Chicago*, 51 Ill. 17; *Atkins* v. *Randolph*, 31 Vt. 226; *State* v. *Tappan*, 29 Wis. 664; *People* v. *Batchellor*, 53 N. Y. 128; *Sanborn* v. *Comm'rs Rice Co.*, 9 Minn. 273; Cooley Const. Lim. 230, and notes.

They also contended that whether the bridge was necessary, and, if necessary, by what municipalities, and in what proportions, the cost of its erection should be borne, were matters of judicial enquiry, in determining which the legis-

lature assumed to exercise judicial powers, in violation of § 1, art. 3, of the constitution, citing *Morrill* v. *Sherburne*, 1 N. H. 199, 204; *Parmelee* v. *Thompson*, 7 Hill, 77, 80; *People* v. *Haws*, 37 Barb. 440; *Taylor* v. *Porter*, 4 Hill, 140, 144; Cooley Const. Lim. 92, 232, 233; Sedgw. Const. Law, 139, 146.

They further contended that, by making the acceptance of the commissioners conclusive, the legislature assumed to vest judicial power in the commissioners, in violation of § 1, art. 6, of the constitution.

*J. M. Shaw* and *Lowry & Wilson*, for respondent.

BERRY, J. When this case was before this court at April term, 1873, (see *Guilder* v. *Town of Otsego*, 20 Minn. 74,) it was argued that the special act involved in its determination (Sp. Laws 1870, ch. 100,) was repugnant to the provisions of our constitution, (art. 9, §§ 1, 2, 3, 4,) requiring all taxes to be equal, and to be levied upon a " cash valuation," and to art. 11, § 5, which declares that " any county and township organization shall have such powers of local taxation as may be prescribed by law.' In passing upon these objections we held, in effect, that in the exercise of its general legislative power it was competent for the legislature to determine upon the necessity of a public improvement, (like the bridge in this case,) and upon the amount of money to be expended in making the same, and also to direct it to be made and paid for by particular towns and counties within the territory of which the proposed improvement would fall. Upon the present appeal it is objected that the special act referred to is unconstitutional because it is an exercise of judicial power by the legislature which is prohibited by art. 3 of our state constitution. The argument is that the questions which we held it to be competent for the legislature to determine are properly subjects of judicial enquiry, and that, therefore, in passing upon them the legislature exercises judicial authority.

If the determination of questions of this nature had, by

v.22m—24

constitutional provision, been expressly committed to the judiciary, they would (irrespective of their intrinsic nature) have been made subjects of judicial enquiry by the paramount force of fundamental law. But, in the absence of such constitutional provision, they are not necessarily subjects of judicial enquiry unless they are such in their intrinsic nature. Questions as to the necessity of a public improvement, (like a bridge, part of a public highway,) or as to the amount of money to be expended in making the same, or as to the particular subordinate govermental sub-division which shall be directed to make and pay for the improvement, are certainly not subjects of judicial enquiry on account of their intrinsic nature. They are questions, the proper determination of which calls for an exercise of sound judgment upon facts to be ascertained by investigation, as in very many, if not all, other cases in which legislative action is required; but, in determining them, the legislature does not assume to sit as a court to decide a controversy between parties. It rather exercises a political, as distinguished from a judicial, function; or, in other words, it performs a function of a governmental character. One of these functions is the providing of public highways. This it performs through legislative methods. It enacts a law—that is to say, prescribes the rule in accordance with which the highway is to be secured. To this end it determines, or may determine, how, by whom, and at what expense, the highway shall be constructed, and, to enable it to determine these matters, it investigates the facts of the particular case that it may legislate intelligently in the premises. The investigation is not judicial in its nature, neither is the determination arrived at, but both are purely legislative.

Towns and counties are political sub-divisions of the state, the purpose of whose creation is solely governmental. They are agencies through which the functions of government are, to a greater or less extent, exercised within their territorial limits—agencies created by and subject to the state,

and, therefore, under the absolute control of the legislature within constitutional limits. In the exercise of this legislative control we can conceive of no reason why it is not entirely competent ·for the legislature, as an exercise of purely legislative power, to determine and enact (as in the case of the special act under consideration) that a particular bridge, a part of a public highway, shall be constructed in a prescribed manner, and within a fixed expense, by towns and counties within whose territorial limits it will lie when completed, and to determine in what proportion these several towns and counties shall contribute to defray the cost of its construction.

The other points made here in behalf of the defendant may be disposed of in a few words.

1. The act authorized either of the commissioners, "if he shall be unable to discharge" his duties, to appoint a substitute. This made each commissioner judge of his own inability, and his certificate, reciting his inability and appointing a substitute, is conclusive in the premises.

2. The act provides that "said bridge, when completed, shall be examined by said commissioners, and if done in accordance with the terms of the contract or contracts under which the same may be built, shall accept the same by their written acceptance, a copy of which shall be filed with the county auditors and town clerks aforesaid," and, further, that it shall be the duty of the county commissioners of the counties of Hennepin and Wright, and of the supervisors of the towns of Dayton and Otsego, "upon proof furnished of the completion and acceptance of said bridge as herein provided," to issue orders to pay for the bridge. The effect of these provisions is to make the examination and written acceptance of the commissioners conclusive upon the counties and towns mentioned—at least in the absence of fraud and mistake. This is not to confer upon the commissioners judicial power. As respects this bridge they act as agents and *quasi* public officers of the towns and counties within the territory of which it is constructed and by

which it is to be paid for. Their authority to examine and accept is, in effect, an authority to audit and allow. They exercise this authority as agents of the towns and counties. It is in all respects analogous to the authority conferred upon town supervisors and county commissioners to audit claims against their respective towns and counties. It is ministerial rather than judicial.

Order affirmed.