STATE, BY CLIFFORD L. HILTON, v. OCTAVIA LAMBERT AND OTHERS.[1]

May 27, 1927.

No. 25,999.

**When amount of traffic on proposed highway is to be considered in award of damages.**

1. The amount of traffic on a highway is an element to be considered as bearing upon loss of time and inconvenience to one whose land is divided by such highway.

[1]Reported in 214 N. W. 653.

**When reply is unnecessary.**
    2. An answer which pleads a conclusion of law does not require a reply.

**When old road is not vacated.**
    When a permanent trunk highway is located by the highway commissioner the practicable road along the general location is not thereby vacated but reverts to the control of the county or town board, as the case may be.

**Jury properly allowed to determine acreage involved.**
    3. The trial court, upon the record, properly permitted the jury to determine the acreage involved in determining damages.

**Verdicts not excessive.**
    4 and 5. The verdict is not excessive.

Eminent Domain, 20 C. J. p. 783 n. 53, 54; p. 1016 n. 65; p. 1048 n. 90.
Highways, 29 C. J. p. 534 n. 6 New.
Pleading, 31 Cyc. p. 246 n. 2 New.

The state appealed from an order of the district court for Stearns county, Roeser, J., denying its motion for a new trial in a condemnation proceeding. Affirmed.

*Clifford L. Hilton*, Attorney General, *Victor E. Anderson*, Assistant Attorney General, and *Hayner N. Larson*, for the state.

*R. B. Brower*, for respondents.

WILSON, C. J.
The state appealed from an order denying its motion for a new trial.

The purpose of this condemnation proceeding instituted by the state on petition of the attorney general was to secure right of way for trunk highway No. 3. Commissioners awarded $4,000 as damages to a farm owned by respondent Joseph F. Eich and $700 as damages to premises owned by respondent Elizabeth A. Eich. The state appealed on the ground that damages awarded were excessive, and a jury increased the amounts to $6,500 and $1,000, respectively.

Mr. Eich owns a 127-acre farm, being a portion of lots 3 and 5 and all of lots 7 and 8, section 27-125-30. The accompanying map [printed on page 371] shows the farm, the lake on the north portion

N.¼ Cor. of Sec. 27

LOT 7     LOT 8

AVON

Pasture

LOT - 5 Cult.

.71 A.
.11 A.
.42 A.     1.35 A.     G.t.     Tim. Past.     Nor.
2.55 A.
Pot Hole
Sh.
Joseph Eich Ho.     B     2.80 A. Cul.     Cult.     RY.     Mrs. Eich Ho.     1.3 A.     .51 A.

Old Road
City Limits

LOT 3 Cult.

Plat of
EICH FARM
SEC. 27-T.125N-R.30W.
STEARNS CO.
Scale 1 Inch = 800 Ft

thereof, the edge of the lake it reaches to the south, and how the farm and its buildings are located in reference to the old and new roads and the railroad right of way. It also shows the small place owned by Mrs. Eich.

1. The farmer whose land is crossed by a trunk highway has a right equal to that of the public in using the same. The amount of traffic on the highway is an element to be considered as bearing upon the loss of time and inconvenience to the farmer in crossing with livestock and machinery. Mr. Eich keeps a herd of 25 dairy cows. It is necessary to take them across the trunk highway twice daily in pasture season and when such stock are to go to the fields to the north. Obviously the extent of the traffic directly affects the inconvenience.

2. The state's answer to Mr. Eich's complaint alleged "that the construction and completion of said new highway does and will constitute an alteration and change of the course of said old road and will therefore automatically operate as a vacation and abandonment of said old road." There is no reply and the state urges that this allegation is an admitted fact. It occurs to us that this is a mere conclusion of law and that a reply was not necessary.

Upon the trial the state offered to prove that the old road would not be called upon to carry the traffic or serve the public but that the new road would accommodate the public and that the new road amounts, as a matter of law, to an alteration of the old which will automatically be vacated and the land in the old road would revert to Mr. Eich. The objection thereto was rightly sustained. How evidence could prove this we do not know. No offer was made to prove any affirmative act to vacate the old road. The state seeks to have G. S. 1923, § 2592, construed so as to make it applicable to the acts of the state highway commissioner. When this statute came into existence (L. 1903, p. 126, c. 96) we had no state highways. Under authority of art. 16 of our constitution a trunk highway system was provided by L. 1921, p. 406, c. 323 (G. S. 1923, c. 13); State, by Clifford L. Hilton v. Voll, 155 Minn. 72, 192 N. W. 188. Section 2592, G. S. 1923, has been applied by this court. Nelson v. County

Board, 154 Minn. 358, 191 N. W. 913; Whiteley v. Strickler, 159 Minn. 145, 198 N. W. 420.

The old road was a temporary trunk highway within the language of L. 1921, p. 406, c. 323. The new road is the location of the permanent trunk highway. This law gave the commissioner power to designate the particular land needed for the right of way for a trunk highway. State v. Voll, supra. There is, however, nothing in this law that indicates an intention of the legislature to have a road used temporarily vacated upon the establishment of a permanent trunk highway. The old road is termed a "practicable road along the general location" in L. 1921, p. 406, c. 323, sec. 13, subd. 3. We are of the opinion that the responsibility of the highway commissioner with respect to such practicable roads is limited to temporary maintenance and upkeep which ends when the permanent trunk highway is in use, at which time the practicable roads revert to the control of the county or town board, as the case may be. G. S. 1923, § 2554, subd. 4. The fact that the commissioner assisted in the upkeep of this temporary or practicable road did not terminate its existence as a county road. The trunk highway act expressly provides that county roads, other than those established by judicial authority, shall be established, altered or vacated only by the county board. L. 1921, p. 406, c. 323, sec. 42, subd. 1 (G. S. 1923, § 2582, subd. 1). G. S. 1923, § 2583, relates to town roads. Section 52, c. 323, p. 406, L. 1921, is the same as G. S. 1923, § 2592. We conclude that the commissioner has no power to vacate a town or county road, and that the highway act makes no changes in the source of the power of vacating such roads.

The contention advanced on oral argument, that the jury should have been permitted to decide whether the new road would in fact remove the traffic from the old road and amount to its abandonment to the benefit of the landowner, cannot be sustained. The facts, as a matter of law, fail to show a vacation or abandonment; and whether the future will show an abandonment is not subject to proof at this time.

3. The new road takes 2.55 acres of Mr. Eich's land. Between the railroad right of way and the new road are 2.8 acres. The right

angle triangle separated from the southwest corner of lot 5 contains 1.35 acres as indicated upon the map but some testimony indicates this tract may contain 1.77 or 2 acres. One witness testified this tract contained 3.33 acres but he probably included a portion of the street. He also testified that this tract contained 2.51 acres and that the road contained 2.75 acres and that the several tracts aggregated 9.46 acres. Other witnesses testified that the total was 6.70 acres. It is claimed that the trial court erred in permitting the jury to determine the acreage involved which resulted in an excessive verdict. The argument rests upon nothing tangible, is speculative, and cannot be made the basis of relief. The record was apparently made in good faith and we see nothing to indicate any reason for the presence of prejudice.

4. The claim that the verdict is excessive rests largely upon the assumption that the testimony of the state's witnesses is true and in a measure disregards some opposing testimony. It also rests upon the theory of different witnesses who attempt to itemize the various elements entering into their conclusions. Appellant's brief says:

"The verdict in the case was $6,500. The landowner's own estimate was $400 per acre for the 2.55 acres of land taken; namely, $1,020; $300 per acre for the land cut off, which, with the so-called salvage of $50 per acre, would leave $450 for damage for land in strip and $337.50 for land in triangle, making a total of $1,807.50. What then can the remaining $4,692.50 be for? It is apparent when the evidence of the witnesses on both sides is considered that there is no testimony in the case on either side to justify the sum of $4,692.50 as damages for inconvenience in the use of the barnyard or in crossing the road with stock and implements. The highest testimony given by any witness was that such inconvenience amounts to from $1,000 to $1,500.

"Assuming for the sake of argument that the same amounted to $2,000, yet even then there remains $2,692.50 wholly unexplained and for which no just or proper basis can be supplied. There is absolutely no testimony to support a verdict against the state therefor, hence it necessarily follows that the verdict is clearly unjustified by the evidence and contrary thereto, as well as contrary to law."

This argument is fallacious in that it attempts to compute the damages to a mathematical certainty, and because only witnesses for the state mentioned a specific amount for the inconvenience, it is assumed that the opposing witnesses in no way contradicted this. This is to overlook the testimony of the witness Schroeder, that the fair and reasonable market value of the farm without the improvement was $24,000 and with it 50 per cent or $12,000 less. Otto Stein, who valued the farm at $22,000 to $23,000, testified the improvement reduced this value 50 per cent. Peter Kost was permitted to give his opinion that the damages were $12,000. Paul Obermiller gave the value at $25,400 and put the damages at 50 per cent or $12,700. There is other testimony of this character.

The location of the valuable buildings on this farm was designed and constructed to face the old road. The symmetry of this plan is destroyed by locating the new road immediately to the rear of the buildings and so near as to interfere to some extent with barnyard conveniences. Men do not ordinarily or usually build farm homes and buildings to face away from the usual approach thereto. Usually it is desirable to have the approach to the front door and not to the rear or kitchen door. The unusual consequential adjustment for this farm necessarily affects its salability and goes directly to its market value. The existing division of the farm by the railroad right of way undoubtedly increased the difficulties of the jury in analyzing the burdens added by the improvement. Unquestionably the reward was liberal, but there is evidence supporting the finding of the jury.

5. The award of damages to Mrs. Eich was within the province of the jury under the evidence. She owned a tract of 2.3 acres. Her house faced the old road. She had trees. The new road comes within two feet of the rear of her house, takes some of the trees, and destroys the well. It divides the place into irregular formation. Some of the state's witnesses placed her damages as high as $400; her witnesses, $1,300 to $1,800. We cannot disturb the verdict.

Affirmed.