# THE KELMAR CORPORATION v. DISTRICT COURT OF FOURTH JUDICIAL DISTRICT AND ANOTHER..

130 N. W. (2d) 228.

August 14, 1964—No. 39,468.

*Bundlie, Kelley & Torrison,* for relator.

*Walter F. Mondale,* Attorney General, *Perry Voldness,* Deputy Attorney General, and *William J. Young,* Special Assistant Attorney General, for respondents.

MURPHY, JUSTICE.

This is certiorari upon relation of The Kelmar Corporation to review an order of the district court granting the petition of the State of Minnesota for appointment of commissioners to appraise damages which may be occasioned by the taking of relator's property. It is the contention of relator that (1) the state is without authority in law to condemn the property; and (2) that in the event it is found there is a right of condemnation, there is no need for the appointment of appraisers since the state has conceded by judicial admission that the property has a value of $30,000. Apparently, Kelmar feels that that sum represents the reasonable value of the property.

The dispute grows out of condemnation proceedings instituted by the state pursuant to plans to build a bridge to carry Interstate Trunk Highway No. 494 across the Minnesota River. There is a high bluff on the west bank at which point the bridge is to cross the river. The flow of the river follows a winding course through low boggy land. The U. S. Army Corps of Engineers has been planning to straighten the river in this area. This project was undertaken in cooperation with the Lower Minnesota River Watershed District, a state agency created pursuant to Minn. St. c. 112 and established for the purpose, among other things, of the conservation of natural resources of the state through "land utilization, flood control and other needs upon sound scientific principles for the protection of the public health and welfare and the provi-

dent use of the natural resources," § 112.34, including the specific utilization of "diverting or changing water-courses." § 112.36(6). The original plan of the U. S. Army Corps of Engineers was to construct a new channel on the east side of the river's present course. The Minnesota State Highway Department, however, favored an alternate plan by which the channel will be cut west of the river's present course closer to the high west bank. Bringing the river closer to the bluff which will form the western terminus of the bridge will make it possible to construct a bridge of only 2,800 feet instead of 4,300 feet, resulting in an estimated saving of $1,646,362. This alternate plan, however, would increase the cost to the Federal government an estimated additional $443,000.

The state, upon recommendation of the highway department, entered into a contract with the United States by which it was agreed that the Corps of Engineers would construct the channel in accordance with the state's plan. A copy of this contract is attached to the petition as an exhibit. By the contract the state agreed to reimburse the Federal government for the additional cost in the sum of $443,000 and further agreed to furnish land with an estimated market value of $50,000 for the construction of the new channel. The result would be a net saving of $1,153,362 to the state. Part of the land required for the new channel, valued at $20,000, is already owned by the state; and the rest, estimated at a value of $30,000, is land which the state now seeks to condemn.[1] This land is located 2,400 feet south of the proposed bridge. The contract further recites that the Lower Minnesota

---

[1]With reference to the anticipated cost of acquiring land for use in the construction of the new channel, the contract provides:

"It is estimated, for accounting purposes only, that the total payment by the State to the Government hereunder is the sum of $443,000.00. The actual amount to be paid by the State hereunder shall be computed as set forth in the preceding paragraphs (1), (2), and (3). Said estimated sum of $443,000.00 plus $30,000.00 for the cost of acquiring Tract I described in Section VI shall be encumbered by the State. The estimated market value of Tract II is $20,000.00 but this tract is presently owned by the State, therefore no additional funds need be encumbered for its acquisition. Said sums shall be encumbered under the same number as this Agreement."

River Watershed District is the local sponsor of the channel change project and has assumed the obligation of furnishing "all lands, easements and rights of way necessary for the construction, operation and maintenance of the project." It goes on to state:

"It is the intention of the State to pay for the total cost of the above described land, including acquisition costs, and to have said land conveyed directly from the owner to the Lower Minnesota River Watershed District for subsequent conveyance by the Watershed District to the Government. The Watershed District is acquiring all of the lands for the Government for the improvement and realignment of the Minnesota River."

The Kelmar Corporation filed objections to the state's petition on the ground that the purpose of the condemnation "is not for highway purposes, that the taking is not necessary but is arbitrary and capricious, and is beyond the authority of the Commissioner of Highways to acquire." Before the trial court The Kelmar Corporation urged in addition that there was no need for the appointment of appraisers for the reason that the contract, which was part of the state's petition, contained a judicial admission as to the value of the property and consequently there was nothing left to litigate on that point. The trial court, after hearing brief testimony from a highway engineer bearing on the description and proposed use of the property in question and after hearing arguments of counsel, made its order denying the objection and granting the petitions for appointment of commissioners to appraise the property.

■ We will consider first the claim of the property owner that there is no highway purpose in the taking and that the highway department's finding of convenience and necessity was arbitrary, unreasonable, and capricious. We must accordingly inquire if the proceedings were vitiated merely because the property to be condemned is not directly used for highway purposes. The property owner relies on State ex rel. Ford Motor Co. v. District Court, 133 Minn. 221, 158 N. W. 240, and State ex rel. Peterson v. District Court, 196 Minn. 44, 264 N. W. 227. In the former case the city of Minneapolis, under the pretense of taking a right-of-way for an alley, sought to exercise its power of eminent do-

main to acquire a right-of-way for the Great Northern Railway. In the latter, the highway department attempted to use its funds for the construction of roadside camping and recreational facilities. The state relies on the more recent authorities of Housing and Redevelopment Authority of City of St. Paul v. Greenman, 255 Minn. 396, 96 N. W. (2d) 673, and Asch v. Housing and Redevelopment Authority of City of St. Paul, 256 Minn. 146, 97 N. W. (2d) 656. In these cases the housing authority condemned slum land, cleared it, and sold it to private parties. It was held that this was part of a unified plan for slum clearance, which is a public purpose.

The property owner argues that the need and convenience actually served is not for the benefit of the highway department but for a "wholly different agency or sovereign," and that the economy and convenience resulting to the state from the construction of a shorter bridge does not justify the taking. They argue that the state is exercising its sovereign right of eminent domain "for the purpose of making money or for the purpose of trading in lands and land values or for the purpose of engaging in the business of a huckster." If this assertion were true, we could readily agree that the action of the state was arbitrary and capricious and therefore unlawful. We are convinced, however, from an examination of the record and authorities, that the taking of the property in question is for a public purpose. Although the direct physical use of the property in question will not be for highway purposes, its use is nevertheless incidental to and related to that purpose. The acquisition of the property in question will make it possible to relocate the main channel of the river so that a bridge may be constructed which will more conveniently and economically serve as a public facility.

The commissioner of highways is empowered by Minn. St. 161.20 to acquire all lands and properties necessary "in laying out" and "constructing * * * the trunk highway system." In State, by Hilton, v. Voll, 155 Minn. 72, 75, 192 N. W. 188, 189, we pointed out that it was the intention of the legislature to delegate to the commissioner "plenary and final power * * * in all that relates to the location, construction, and maintenance of the trunk highway system in order to obtain the

best results." Subject only to the requirement that he not act arbitrarily and capriciously, it is for the highway commissioner to say what land is necessary to the establishment and maintenance of the highway system. We said in State, by Mondale, v. Ohman, 263 Minn. 115, 119, 116 N. W. (2d) 101, 104:

"* * * It is well settled * * * that the commissioner of highways has been vested by the legislature with the authority to designate and acquire through condemnation proceedings lands needed for trunk highway purposes * * *; that in so acting, he is acting for the state in its sovereign capacity * * *; that such authority includes the right to take from adjacent landowners their right of access to trunk highways in the interests of safety and convenience * * *; and that the courts may not interfere with the determination of the commissioner of highways, acting for the state in its sovereign capacity, if his determinations have a reasonable basis and are not arbitrary, capricious, or discriminatory. * * *

"Whether a taking by the commissioner of highways is arbitrary or discriminatory ordinarily presents a question of fact for the trial court subject to the same governing principles on appeal as are fact questions in other types of litigation. If there is evidence or reasonable inferences from evidence which gives support to the determinations of the finders of fact with respect to this issue this court may not interfere therewith."

It may be further noted that it is not necessary for the condemnor to show an absolute or indispensable necessity, but only that the proposed taking is reasonably necessary or convenient for the furtherance of a proper purpose. Chicago G. W. Ry. Co. v. Jesse, 249 Minn. 324, 82 N. W. (2d) 227.

■ The property owner contends that the condemnation of his land for use in the construction of a river channel does not come within the scope of authority delegated to the commissioner of highways. It is ordinarily true that the power of eminent domain can be exercised only as authorized by the legislature. This court, however, since Burnquist v. Cook, 220 Minn. 48, 19 N. W. (2d) 394, is committed to a rule of construction which recognizes implied powers in addition to those

expressly conferred upon the commissioner. We pointed out in that case that the commissioner of highways represents the state acting in its sovereign capacity; and that the state, by order of the highway commissioner, appropriates designated lands through condemnation proceedings. We went on to say (220 Minn. 59, 19 N. W. [2d] 400):

"* * * As required by the statute, the proceedings are brought in the name of the state, and the state in its sovereign capacity obtains title to the property involved in the condemnation proceedings. The statute (Minn. St. 1941, § 117.03 [Mason St.1927, § 6539]), authorizing such proceedings, provides:

" 'If such property be required for any authorized purpose of the state, *the proceeding shall be taken in the name of the state by the attorney general upon request of the officer, board, or other body charged by law with the execution of such purpose;* * * *.' (Italics supplied.) "The majority of cases clearly establish that the principle of strict, construction has no application insofar as the state or public departments thereof are concerned. As stated in 29 C. J. S., Eminent Domain, § 22:

" '* * * but this principle is not applied as strictly to public bodies as it is in construing powers given to private corporations, and the construction should not be so strict as to defeat the evident purpose of the legislation. While the power should not be gathered from doubtful inferences, *it need not be expressly conferred if it appears by clear implication.'* (Italics supplied.)"

Authorities from other jurisdictions have considered the situation involving condemnation proceedings by one governmental agency pursuant to its delegated purposes where property involved may be used for related purposes of another agency. See, Dohany v. Rogers, 281 U. S. 362, 50 S. Ct. 299, 74 L. ed. 904, 68 A. L. R. 434; Leitzsey v. Columbia Water-Power Co. 47 S. C. 464, 25 S. E. 744, 34 L. R. A. 215; Brown v. United States, 263 U. S. 78, 44 S. Ct. 92, 68 L. ed. 171; Harwell v. United States (10 Cir.) 316 F. (2d) 791; George D. Harter Bank v. Muskingum Watershed C. Dist. 53 Ohio App. 325, 4 N. E. (2d) 996. These authorities generally hold that where the exercise of the power of eminent domain by an agency of the state per-

mits acquisition of property for a lawful public use, the taking may not be defeated merely because the land thus acquired will also serve a lawful public use by another agency of the state.

■   Moreover, the authority of the highway commissioner in condemnation cases has been augmented by certain important statutory provisions, among which is Minn. St. 161.20, subd. 2, which provides in part:

"* * * The commissioner may make agreements with and cooperate with any governmental authority for the purpose of effectuating the provisions of this chapter."[2]

The U. S. Army Corps of Engineers and two state agencies are involved in the overall program. The U. S. Army Corps of Engineers and the watershed district will improve the usefulness of the Minnesota River for navigation, drainage, and flood control, while the highway department will have a shorter bridge, save over a million dollars in its construction, and have the benefit of substantial savings in future maintenance costs. While the property involved here will serve a purpose in the general scheme of navigation and flood control, it will also bring the channel of the river close to the high west bank, and thus essentially improve the public highway system.

■   We next turn to the claim of the property owner that there is no need for the appointment of appraisers in this proceeding since the state has conceded by judicial admission that the value of the property is $30,000. It would appear that the property owner would accept the estimated value of $30,000 in compensation for his property. The reference to the value of the landowner's property is contained in an exhibit attached to the state's petition for appointment of appraisers. The exhibit is the contract between the highway department and the U. S. Army Corps of Engineers, which contains the estimated cost of construction of the alternate channel and the cost of acquiring property for that purpose. We cannot agree with the property owner that this reference in the pleading eliminates from the case the issue of reasonable value of the property involved. The property owner relies upon

---

[2]See, also, Minn. St. 161.27 and 117.015.

general authorities relating to judicial admissions contained in pleadings. It is sufficient only to say that the $30,000 value referred to in the contract is an estimate. A statement is not conclusive as a judicial admission upon the party making it unless it is intentionally made as a waiver of the requirement that the other party submit proof on that point. Vermaas v. Heckel, 170 Neb. 321, 102 N. W. (2d) 647; Stockton v. Tester (Mo. App.) 273 S. W. (2d) 783. We pointed out in Holden v. Farwell, Ozmun, Kirk & Co. 227 Minn. 243, 246, 34 N. W. (2d) 920, 921, that it is not the function of this court to seize upon and adopt "a narrow and technical admission in the pleadings without regard to the significance and import of the pleadings as a whole."

■ The property owner further contends that the whole project is speculative; that the application of funds of the Federal government is tentative; that the condemnation is premature; that the property may be simply used sometime in the future to "furnish trading stock for the commissioner"; that the legal status of the Lower Minnesota River Watershed District is in doubt; and that there is a grave question as to whether that authority may participate in the overall project. On the meager record which is before us, we can only assume that the condemnation proceedings are brought in good faith; that definite commitments have been made by the Federal government; and that the watershed district is a legally constituted agency of the state empowered to participate in the project. In any event, the objections thus raised or suggested are not properly before us. If they actually have substance and materiality, they should be asserted in further proceedings in the district court.

Affirmed.