## CITY OF ST. CLOUD v. PAUL J. PAPPENFUS.

176 N. W. (2d) 85.

February 27, 1970—No. 41717.

224

Quinlivan, Williams, Johnson & Quinlivan, Roger Quinlivan, Gordon Rosenmeier, and John E. Simonett, for relator.

Donard J. Kunesh, for respondent.

OTIS, JUSTICE.

This matter is before the court on a writ of certiorari to review the propriety of an order authorizing the city of St. Cloud to condemn 10 acres of relator's land for a storm sewer holding pond.

The property which St. Cloud seeks to condemn is not located within the city limits. It is one of two 10-acre tracts designed to hold water which drains from a 2,200-acre area through the city into the Sauk River and thence into the Mississippi River. One of the 10-acre ponds has already been acquired and is in operation.

The purpose of the ponds is to accumulate drainage water and to prevent flooding by permitting its gradual release through storm sewers. In this manner smaller conduits may be utilized and costs reduced. At the holding pond the pipe is 42 inches in diameter, and where water is discharged into the Sauk River it is 92 inches in diameter.

The city began a study of the problem in 1965, and with the township of St. Cloud, the village of Waite Park, and the village of Sauk Rapids formed a metropolitan planning commission. It requested the Soil Conservation Service to study the drainage problem. That agency recommended a drainage ditch. The Department of Highways was involved by reason of the proposed construction of roads which would act as dikes and would there-

fore require culverts. After a study and report by the St. Cloud city engineer and a consulting engineer, the holding pond plan was adopted.

Relator, the affected owner of the property here under consideration, argues that the city had no authority to condemn and should not be permitted to proceed unilaterally without a coordinated plan. He contends that it is bad public policy to pursue the condemnation, it is wasteful, and may produce a wrong solution. Further, he states that as to him the taking is capricious because it may not be needed.

■ Judge Rosengren found that the taking was necessary and for a proper public purpose and hence authorized by Minn. St. c. 117. He held that the city had authority to construct the storm sewer system outside the city limits if it was designed to serve a proper city function. In this view we concur. Nevertheless, it is argued that the city had a duty to defer to overall planning for the entire 2,200-acre watershed. To that end, relator earnestly suggests it was the obligation of the city to refer the matter to the Water Resources Board for whatever proceedings may be appropriate under § 105.74. The court held that the city was not an "agency" within the meaning of the statute and the condemnation was not a "proceeding" contemplated by that law. By way of rejoinder, relator submits that there are a number of agencies involved, such as the commissioner of conservation, the Department of Highways, the Soil Conservation Service, and the Metropolitan Planning Commission. Hence, it is argued, not only § 105.74 but § 105.41 is applicable. We agree with the trial court that these statutes do not govern here and that the city was authorized to proceed under c. 117. The city did in fact confer with other agencies and subdivisions of government, but no coordinated plan was developed or initiated by any of them. It was not incumbent upon St. Cloud to ignore or delay the solution of its own drainage problems while other agencies beyond the city's jurisdiction pondered the feasibility of coping with broader problems. Clearly, it was a proper function of the city

to dispose of storm water in a way which to it seemed effective and economical. There is no suggestion on the part of relator that it has not done so.

Relator does vigorously dispute the propriety of taking a second 10-acre tract until such time as the need for it is manifest. The trial court's disposition of this contention is well stated in its memorandum:

"The foregoing also answers the issue raised by counsel for respondent to the effect that the taking is unnecessary and capricious. The evidence shows that the comprehensive plan for the storm water drainage system had been studied since 1965. The city employed consulting engineers and procured their recommendations. The matter was brought to the attention of the Commissioner of Conservation because of the proposed outlet into the Sauk River. Officials of the Minnesota Highway Department were consulted and, significantly, the expert who testified in behalf of respondent was with the highway department when the plan now adopted by the city was approved. This same expert conceded that the proposed plan was presently adequate but that it might not be adequate for future development. He also conceded that the consulting engineers were a reputable and competent firm, and that the system as designed was adequate for its purposes, the size of the proposed holding pond being a matter of judgment. Therefore, under the circumstances, I cannot understand how any serious claim can be made that the action of the city was arbitrary and capricious."

It would be shortsighted indeed to plan with an eye only to current drainage problems when the testimony of experts supported by common experience indicates that future conditions will require additional facilities to prevent flooding from overtaxed sewer systems. We therefore hold that the trial court was correct in deciding that the condemnation of a second 10-acre tract was not premature, rash, or capricious.

■ The condemnation petition did not seek to acquire the in-

choate interest of relator's wife. He argues that the proceedings are, to that extent, defective. Judge Rosengren's disposition of this claim was a practical one and we adopt it:

"When the amount of compensation to be paid to the fee owner is determined, this will represent full compensation for the land taken and the public should not be required to compensate for any contingent rights. If this spouse realistically and honestly thinks that she is entitled to any share of the award, she may take such action as she may deem advisable to collect her share for payment of any theoretical contingent dower right. As a practical matter, I know in my own mind that this will probably not happen; and, I am of the opinion that the objection being made by counsel is technical rather than real."

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.