STATE of Minnesota, by Hubert H. HUMPHREY, III, its Attorney General, Petitioner, Respondent,

v.

Hilda BYERS, et al., Appellants,

Richard Byers, et al., Lower Court Respondents.

No. C9–95–1782.

Court of Appeals of Minnesota.

April 2, 1996.

670

Hubert H. Humphrey, III, Attorney General, Cassandra O. O'Hern, Assistant Attorney General, St. Paul, for respondent.

Gerald W. Von Korff, Rinke–Noonan, St. Cloud, for appellants.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

An assessed landowner, Hilda Byers, appeals from a district court order granting to the Department of Transportation a drainage easement over a portion of her property. We affirm.

## FACTS

The state petitioned the district court to acquire from appellant a drainage easement over 43.96 acres in perpetuity. Parcel 329, upon which the easement is sought, is located near the intersection of Trunk Highway Route 92, renumbered 30 ("T.H.30") and County Ditch No. 42 (the ditch). In 1964, the Minnesota Department of Transportation (MnDOT) reconstructed T.H. 30's crossing over the ditch, replacing a double box culvert with a concrete pipe culvert in the process. The new culvert was about half the size of the culvert in place before reconstruction. Subsequently, water backed up at the culvert and flooded appellant's property. The state paid Byers for crop damages sustained in 1965, 1966, 1984, and 1993.

In December 1993, appellant formally petitioned the County Drainage Authority to remove, or cause MnDOT to remove, the "obstruction" to the drainage system created when MnDOT installed the smaller culvert. The County Drainage Authority, however, has repeatedly voted to take no action.[1]

MnDOT determined that it would be more economical to obtain a drainage easement than either to reconstruct T.H. 30's passage over the ditch or to continue paying crop damages to appellant. Accordingly, the Commissioner of Transportation determined that acquisition of a drainage easement was necessary to the construction and maintenance of T.H. 30. MnDOT was unable to negotiate a purchase with appellant, and the instant proceeding in eminent domain was commenced. At trial, appellant disputed the Commissioner's determination that the easement was necessary to the construction and maintenance of T.H. 30. Appellant argued

that the easement was sought merely to avoid MnDOT's alleged obligations under the Drainage Act, Minn.Stat. §§ 103E.005–.811 to restore the capacity of the ditch, and thus was neither necessary nor for a public highway purpose.

The trial court found, however, that MnDOT could have obtained easements when it reconstructed T.H. 30 had it anticipated flooding, and hence could obtain an easement after the flooding had occurred. The district court found acquisition of the easement necessary to a public highway purpose because it would allow T.H. 30 to remain undisturbed.

Appellant contends that the underlying issue in this case is one of drainage rather than eminent domain law. Appellant argues that MnDOT obstructed the ditch when it reconstructed T.H. 30 in 1964 and that the Cottonwood County Drainage Authority was the proper forum to adjudicate the underlying drainage issue. Appellant concludes that MnDOT seeks to circumvent its obligations under the Drainage Code by condemning this easement rather than reconstructing T.H. 30 to restore its original capacity.

## ISSUES

I. Does the drainage exception to Minn. Stat. Chapter 117 preclude MnDOT from exercising its condemnation power where a drainage system is affected?

II. Does the Drainage Act operate to vest exclusive jurisdiction over drainage matters in drainage authorities?

III. Does the Drainage Act impose a duty upon MnDOT to await decision by a drainage authority before taking action potentially subject to the drainage authority's jurisdiction?

IV. Was condemnation of appellant's property necessary and for a public purpose?

## DISCUSSION

*Standard of Review*

■ On appeal, this court may reverse the decision of the agency if its decision is "in

---

1. The Drainage Authority essentially tabled appellant's motion, pending resolution of this ac-

tion.

excess of the statutory authority or jurisdiction of the agency." *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984); Minn.Stat. § 14.69(b) (1994). Public purpose and necessity are treated as questions of fact for the trial court and will not be reversed unless clearly erroneous. *State v. Ohman,* 263 Minn. 115, 120 116 N.W.2d 101, 104 (1962).

## I.

■ Minn.Stat. Chapter 117 governs the procedure by which state agencies (and other condemnors) exercise the power of eminent domain. Minn.Stat. § 117.011 expressly excludes acquisition of property for drainage system purposes. *Id.* The Drainage Act comprehensively regulates the creation, maintenance, and abandonment of drainage systems. *See generally,* Minn.Stat. §§ 103E.005–.811. Appellant argues that the drainage exception to Chapter 117 "means that establishment, construction, maintenance and repair of drainage systems is governed exclusively by [the Drainage Act]."

Minn.Stat. § 117.011 provides, in relevant part:

All bodies, public or private, who have the right of eminent domain, when exercising the right, shall do so in the manner prescribed by this chapter, even though a different procedure may be provided by charter provisions, ordinance or statute, but nothing herein shall apply to the taking of property under laws relating to drainage or to town roads when those laws themselves expressly provide for the taking and specifically prescribe the procedure.

The plain intent of the section is to prescribe, as far as practicable, a single procedure for the exercise of the condemnation power by bodies vested with the right of eminent domain. The drainage exception merely recognizes that special considerations attendant to establishing and maintaining drainage systems necessitate a different procedure. Thus, acquisition of interests in property by drainage authorities is governed by the Drainage Act, rather than Minn.Stat. Chapter 117. The drainage exception itself does not limit the authority, or the manner, in which other bodies exercise the condemnation power.

## II.

■ Appellant argues the legislature intended the Drainage Act to govern all issues arising from the creation, life, and abandonment of a drainage system. The Drainage Act, in fact, sets out the powers and duties of Drainage Authorities and the procedure for creating and maintaining drainage systems, accounting for and distributing the costs of drainage systems, the rights and obligations of landowners whose property is part of a drainage system, and the procedure for removing property from a drainage system. *See generally* Minn.Stat. §§ 103E.005–.811. It does not follow, however, that the Drainage Act operates to constrain the authority of MnDOT, or the jurisdiction of the District Court.

■ When a drainage system is established, the drainage authority acquires jurisdiction over its constituent property, and landowners recovering damages or incurring assessments acquire property rights in the ditch system. *Fischer v. Town of Albin,* 258 Minn. 154, 156, 104 N.W.2d 32, 34 (Minn. 1960) (citing *Petition of Jacobson re County Ditch No. 24,* 234 Minn. 296, 299, 48 N.W.2d 441, 444 (1951)). The alleged obstruction created by the 1964 reconstruction of T.H. 30 may affect the capacity, or maintenance costs, for the entire system. Indeed, if the alleged obstruction to T.H. 30 reduces the capacity of the system, condemnation of a drainage easement may affect the interests of other landowners in the system.[2] For these reasons, appellant asserts the Cottonwood Drainage Authority, rather than the district court, is the appropriate forum to resolve this matter.

■ Property interests in a ditch system, like all property interests, may not be infringed without due process of law. *Fischer,*

---

2. In fact, MnDOT acquired drainage easements from a number of affected landowners through negotiated purchase.

258 Minn. at 156, 104 N.W.2d at 34 (citing *Petition of Jacobson*, 234 Minn. at 299, 48 N.W.2d at 444). In essence, MnDOT now seeks to compensate appellant for the constructive taking which occurred when the reconstruction of T.H. 30 reduced the capacity of the ditch, causing occasional flooding of appellant's land. To begin our analysis of the purported conflict in authority created by the interplay of Chapters 117 and 103E, we must refer to fundamental propositions underlying those statutes.

■ The Minnesota Supreme Court has observed that "not all condemnors enjoy equal powers of eminent domain." *Matter of the Commr's Order Denying Permit Application 93–1024,* 527 N.W.2d 173, 176 (Minn. App.1995), *review denied* (Minn. Apr. 27, 1995) (citing *State v. Christopher,* 284 Minn. 233, 238, 170 N.W.2d 95, 96 (1969)). Rather, there is a hierarchy of entities, with the state at the top. *Id.* A drainage system may pass over a number of landowners' estates and even county lines. MnDOT, however, must balance concerns of statewide magnitude. Indeed, MnDOT exercises the power of the sovereign in highway matters. *Christopher,* 284 Minn. at 241, 170 N.W.2d at 99. The power of lesser subdivisions, such as a drainage authority, may not be equated with the power of the sovereign, as exercised by MnDOT. *Id.* the interest of the Cottonwood County Drainage Authority does not preclude MnDOT's exercise of its condemnation power. Similarly, the mere possibility that other landowners' interests in the drainage system may be affected also does not preclude exercise of MnDOT's eminent domain authority. Affected landowners may intervene in the condemnation proceeding, or commence a proceeding in inverse condemnation. In the present case, it appears that other affected landowners chose to negotiate drainage easements with MnDOT.

### III.

■ Appellant contends the condemnation of her property cannot be for a public purpose because it runs counter to a statutory duty. According to appellant, the Drainage Act creates a duty in MnDOT to avoid reducing the capacity of drainage systems affected by its highway projects. Allowing the condemnation here, it is argued, allows MnDOT simply to buy its way out of a statutory obligation. Rather, appellant contends, MnDOT must reconstruct T.H. 30 to restore the ditch's pre–1964 capacity. Absent action by the drainage authority, however, MnDOT is under no such obligation.

The Drainage Act provides a procedure for determination of whether a drainage system has been obstructed. Minn.Stat. § 103E.075. If a drainage authority determines that a drainage system has been obstructed, by a private or public entity, it must order the obstructing entity to remove the obstruction. *Id.,* subd. 1. Moreover, the drainage authority is empowered to remove the obstruction and charge the expense to the obstructing entity. *Id.,* subd. 3. These provisions potentially vest some authority in the drainage authority to compel action from the state.

The Minnesota Supreme Court has held that towns may not infringe upon the rights of an owner of land within a drainage system by the construction, repair, and maintenance of town roads. *See, e.g., Fischer,* 104 N.W.2d at 34. As noted above, however, there is a hierarchy of condemning entities. Since MnDOT acts in the sovereign capacity of the state, it is in a position different from that of town authorities.

In the present case, the Cottonwood County Drainage Authority has refrained from hearing or acting upon the matter. The state, by contrast, has asserted its authority to solve its problem. It was not incumbent on MnDOT to consult the drainage authority officially, nor await its action before proceeding to acquire the drainage easement.

In an analogous case, the Minnesota Supreme Court held a municipality was not required to consult the Water Resources Board before implementing a solution to its drainage problems. *City of St. Cloud v. Pappenfus,* 286 Minn. 223, 225, 176 N.W.2d 85, 86 (Minn.1970). In *Pappenfus,* the City of St. Cloud sought to condemn property for a storm sewer holding pond. *Id.* The landowner argued that the city should be prohibited from acting unilaterally in a matter that might affect the entire watershed district.

*Id.* However, neither the Water Resources Board nor other affected agencies and bodies had taken action. *Id.* The court held:

> It was not incumbent upon St. Cloud to ignore or delay the solution to its own drainage problems while other agencies beyond the city's jurisdiction pondered the feasibility of coping with broader problems. Clearly, it was a proper function of the city to dispose of storm water in a way which to it seemed effective and economical.

*Id.*

Likewise, the Cottonwood County Drainage Authority has taken no action regarding the alleged obstruction to the ditch. It was not incumbent upon MnDOT to ignore or delay the solution to the flooding caused by T.H. 30 while other entities beyond the department's jurisdiction pondered the problem. Rather, it was a proper function of the department to resolve the flooding problem in the manner which seemed to it most effective and economical. *See id.*

#### IV.

■ The trial court found that the easement serves a public highway purpose because it addresses the flooding problem arising from the passage of T.H.. 30 over the ditch, while allowing "the culvert now in place to remain in place undisturbed." Thus, the court found the easement "incidental to and related to public highway purposes." Moreover, the court found MnDOT could have obtained in 1964 the easement sought today, if it had then anticipated the flooding.

■ It is well established that MnDOT has a legislative grant of authority to acquire properties the Commissioner of Transportation deems reasonably necessary for, or incidental to, public highway purposes. *Kelmar Corp. v. District Ct. of Fourth Jud. Dist.,* 269 Minn. 137, 142, 130 N.W.2d 228, 231 (1964). Thus, the court may only interfere with the Commissioner's determination where it is manifestly arbitrary or capricious. *State v. Ohman,* 263 Minn. 115, 120, 116 N.W.2d 101, 104 (1962). The Commissioner was faced with the alternatives of paying appellant for flooding damages from time to time or of acquiring an easement or of reconstructing T.H. 30. The trial court found, "[u]nder these circumstances it is neither arbitrary nor capricious to choose the least expensive of the * * * alternatives available." *See Kelmar,* 269 Minn. at 142, 130 N.W.2d at 231. Evidence in the record supports the trial court's findings that condemnation of the easement is necessary and incidental to the construction and maintenance of T.H. 30.

#### DECISION

The trial court properly granted MnDOT's petition for a drainage easement in appellant's property abutting the intersection of T.H. 30 over the ditch.

**Affirmed.**