**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0016**

J & W Asphalt, Inc.,
Respondent,

vs.

Belle Plaine Township,
Appellant,
State of Minnesota,
Department of Transportation,
Respondent.

**Filed August 1, 2016**
**Affirmed**
**Reyes, Judge**

Scott County District Court
File No. 70CV144785

Gary A. VanCleve, Timothy A. Rye, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, Minnesota (for respondent J & W Asphalt)

Paul D. Reuvers, Nathan C. Midolo, Iverson Reuvers Condon, Bloomington, Minnesota (for appellant)

Lori Swanson, Attorney General, Stephen D. Melchionne, Assistant Attorney General, St. Paul, Minnesota (for respondent Department of Transportation)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Bratvold, Judge.

## S Y L L A B U S

Minn. Stat. § 161.16, subd. 4(b) (2014), is unambiguous and does not require that a political subdivision accept MnDOT's conveyance of a road that is a necessary part of an upgrade to a trunk highway system for the conveyance to be effective.

# O P I N I O N

**REYES**, Judge

Appellant argues that Minn. Stat. § 161.16, subd. 4(b), contains an implicit acceptance requirement, and because it did not accept the conveyance of Hanlon Drive from respondent, the conveyance was not effective. Appellant further argues that Hanlon Drive is a cartway, and the private landowners whose property abuts the road are responsible for its maintenance. Finally, appellant argues that it neither opened Hanlon Drive nor authorized the expenditure of public funds for it, so it cannot be responsible for maintaining it. Because we conclude that Minn. Stat. § 161.16, subd. 4(b), contains no implicit acceptance requirement, and because we further conclude that Hanlon Drive is a public road that appellant is responsible for maintaining, we affirm.

## FACTS

In 2003, as part of a project to upgrade trunk highway 169 (TH 169), respondent Minnesota Department of Transportation (MnDOT) initiated condemnation proceedings on a portion of respondent J&W Asphalt, Inc.'s (J&W) property located within the territorial boundaries of appellant Belle Plaine Township (the township). J&W operates a place of business along TH 169, which previously had direct access from TH 169. As part of the TH 169 upgrade, J&W's direct access from TH 169 was closed off. Because the closure of this direct access would have otherwise resulted in J&W's property being landlocked, MnDOT condemned a strip of an adjacent landowner's property and constructed a new road, Hanlon Drive, which intersects with a county road.

2

On July 10, 2007, a township clerk sent MnDOT an e-mail, which stated, "This e-mail is acknowledgement of the accepting of Parcel 315 'Hanlon Drive' as a Belle Plaine Township Road as outlined in Mn/DOT Plat 70-26 and Scott Co Plat #36.  The accepting of this road was discussed at our Regular Board Meeting held on July 3, 2007."  The township does not deny that the township clerk sent this e-mail.  The township contends, however, that the clerk was instructed by a MnDOT official to send the e-mail and did so because she believed she was required to follow MnDOT's directive.  The township further contends that its board never passed a resolution formally accepting Hanlon Drive.  On March 4, 2008, MnDOT sent a "Notice of Release of Trunk Highway" to the township clerk, stating that the release would be effective on April 1, 2008.

In 2010, J&W's ownership changed, and the new owner discovered that the township had not been maintaining Hanlon Drive.  J&W representatives began attending township board meetings to request that the township assume responsibility for the maintenance of Hanlon Drive.  The township refused to do so.

On March 21, 2014, J&W filed a complaint, seeking (1) a declaratory judgment providing that Hanlon Drive is a township road and (2) temporary and permanent injunctive relief ordering the township maintain Hanlon Drive.  The township filed an answer on April 14, 2014, denying that it accepted responsibility over Hanlon Drive.

The parties filed cross-motions for summary judgment, and a motion hearing was held.  Following the hearing, the district court filed an order granting J&W's motion for summary judgment in part, declaring that Hanlon Drive is a public right-of-way and not a cartway.  But the district court also ordered that MnDOT be joined as a party to the

3

proceedings, to ensure that complete relief could be granted on the remaining issues. J&W amended its complaint accordingly.

MnDOT filed a motion to dismiss pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted. A motion hearing was held and the district court took the case under advisement. The district court filed an order granting MnDOT's motion to dismiss, concluding that the township, not MnDOT, is responsible for maintaining Hanlon Drive. The township now appeals.

## ISSUES

I.   Does Minn. Stat. § 161.16, subd. 4(b), implicitly require that a town accept MnDOT's conveyance of a road that is a necessary part of an upgrade to the trunk highway system for that conveyance to be effective?

II.   Did the district court err in concluding that Hanlon Drive is not a cartway?

III.   Did the district court err in concluding that the township is required to maintain Hanlon Drive even though the township never did not open the road and has not yet authorized the expenditure of public funds for it?

## ANALYSIS

## I.

The township argues that Minn. Stat. § 161.16, subd. 4(b), contains an implicit acceptance requirement for MnDOT's conveyance of Hanlon Drive to the township to be effective. The township further argues that, because it never accepted the conveyance of Hanlon Drive, the road is still under MnDOT's jurisdiction, and MnDOT is responsible for the road's maintenance. We are not persuaded.

"When reviewing a case dismissed pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted, the question before [an appellate

4

court] is whether the complaint sets forth a legally sufficient claim for relief." *Herbert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008). Here, that question involves a question of statutory interpretation, which appellate courts review de novo. *Sumner v. Jim Lupient Infiniti*, 865 N.W.2d 706, 708 (Minn. 2015). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous. If a statute is unambiguous, then [appellate courts] must apply the statute's plain meaning." *Sumner*, 865 N.W.2d at 708 (quotations and citation omitted). Here, the parties agree, as do we, that the statute is unambiguous and contains no express acceptance requirement. Minn. Stat. § 161.16, subd. 4(b), provides:

> If the portion had its origin as a trunk highway, it shall become a county highway unless it lies within the corporate limits of a city, in which case it shall become a street of the city. When the existing road that is no longer a part of the trunk highway by reason of the change lies within a city of less than 5,000 population, the portion shall revert to the county if the portion meets the criteria for a county state-aid highway. . . . **Notwithstanding the other provisions of this chapter or other applicable laws and rules, [the MnDOT] commissioner may convey and quitclaim to a county, city, or other political subdivision all or part of the right-of-way of the existing road that is no longer a part of the trunk highway by reason of the commissioner's order or orders.** The conveyance shall be for highway purposes, and the future cost of maintenance, improvement, or reconstruction of the highway and the contribution of that highway to the public highway system is reasonable and proper consideration for the conveyance.

(Emphasis added.)[1]

The statute contains no implicit acceptance requirement. If the legislature had intended to include an acceptance requirement, it could have done so explicitly. *See Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 83 (Minn. 2012) ("If the [l]egislature had intended that the statute cover nonparties in this situation, the [l]egislature could have included an express directive to this effect."). And the legislature could have done so, either in the statute itself, or by defining the terms "convey" or "quitclaim" to include an acceptance requirement. This is illustrated by Minn. Stat. § 161.24, subd. 6 (2014), which states that the commissioner and road authority affected by changes required for a trunk-highway upgrade project may enter into agreements to provide for such changes. But even under Minn. Stat. § 161.24, subd. 6, an agreement is permissive, not mandatory. Moreover, we cannot "add words to a statute that are purposely omitted or inadvertently overlooked by the [l]egislature." *Frederick Farms, Inc. v. Cty. of Olmsted*, 801 N.W.2d 167, 172 (Minn. 2011) (quotation omitted).

The township urges this court to adopt the common-law definitions of "convey" and "quitclaim" found in *Comer v. Baldwin*, 16 Minn. 172 (1870), and *Neill v. Hake*, 254 Minn. 110, 93 N.W.2d 821 (1958). As an initial matter, we note the logical inconsistency of appellant's position that the statute is unambiguous while urging us to look to caselaw to interpret unambiguous terms. Nevertheless, *Comer* and *Neill* are not helpful to our analysis, because neither case addresses a transaction between two governmental entities

---

[1] The parties agree that this statute applies and we proceed on this premise.

or includes MnDOT as a party. The instant case is therefore distinguishable because political subdivisions have rights and obligations distinct from individuals. *Kelmar Corp. v. Dist. Ct. of Fourth Judicial Dist., Hennepin Cty.*, 269 Minn. 137, 141-42, 130 N.W.2d 228, 231 (1964). Specifically, the MnDOT commissioner is vested with broad authority to create, maintain, and oversee our public roads and highway systems, *Guilder v. Town of Dayton*, 22 Minn. 366, 370-71 (1876). This broad authority includes the power to delegate responsibility to political subdivisions. *Id.*

While not directly on point, the supreme court tangentially discussed this type of transaction in *State v. Lambert*, 171 Minn. 369, 214 N.W. 653 (1927). In *Lambert*, the supreme court stated:

> We are of the opinion that the responsibility of the highway commissioner with respect to such practicable roads is limited to temporary maintenance and upkeep, which ends when the permanent trunk highway is in use, at which time the practicable roads revert to the control of the county or town board, as the case may be. The fact that the commissioner assisted in the upkeep of this temporary or practicable road did not terminate its existence as a county road. The trunk highway act expressly provides that county roads, other than those established by judicial authority, shall be established, altered, or vacated only by the county board. We conclude that the commissioner has no power to vacate a town or county road, and that the highway act makes no changes in the source of the power of vacating such roads.

*Id.* at 373, 214 N.W. at 655 (citations omitted). The discussion in *Lambert* of the applicable statutes supports the conclusion that "practicable roads" that are part of an improvement to the trunk highway subsequently may revert to the control of a political subdivision.

7

Finally, we are aware of the potential impact our decision has on counties, cities, and towns, and it is not one that we make lightly. We are, however, without the authority to amend an unambiguous statute. Minn. Stat. § 645.16 ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). Moreover, we are cognizant of the fact that it is common for MnDOT to enter into agreements with political subdivisions before constructing new roads and, in that agreement, expressly allocate responsibility for the ongoing maintenance. We in no way intend to discourage MnDOT from entering into these types of agreements, which are most likely to produce a mutually acceptable result.

In sum, we hold that the statute is unambiguous, and under its plain meaning, there is no requirement that a political subdivision accept a MnDOT conveyance of a road that was a necessary part of the trunk highway system for the conveyance to be effective.

**II.**

The township next argues that the district court erred in concluding that Hanlon Drive is a public road and not a cartway under Minn. Stat. §§ 164.08, .11 (2014).[2] We disagree.

On appeal from summary judgment, appellate courts review whether there are any genuine issues of material fact and if the district court erred in its application of the law.

_____

[2] J&W and MnDOT contend that the township did not raise this issue before the district court. A review of the memoranda submitted, however, shows that the issue was presented to the district court. Therefore, we address this argument on the merits.

*STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002). "[Appellate courts] view the evidence in the light most favorable to the party against whom summary judgment was granted" and "review de novo whether a genuine issue of material fact exists." *Id.* at 76-77. We also review issues of statutory interpretation de novo. *Christianson v. Henke*, 831 N.W.2d 532, 535 (Minn. 2013).

A cartway may be created either by petition to the town board or dedication by private landowners. Minn. Stat. §§ 164.08, .11; *see also Kennedy v. Pepin Township of Wabasha County*, 784 N.W.2d 378, 380 (Minn. 2010); *Horton v. Township of Helen*, 624 N.W.2d 591, 595 (Minn. App. 2001), *review denied* (Minn. June 19, 2001). Here, there was no petition to the town board for the establishment of a cartway. Nor was there a dedication of the land to public use. MnDOT acquired the land for Hanlon Drive through condemnation and constructed Hanlon Drive as part of the TH 169 upgrade. Therefore, we conclude that the district court did not err in determining that Hanlon Drive is a public road and not a cartway.

### III.

Finally, the township argues that it is not required to maintain Hanlon Drive because the township neither opened Hanlon Drive nor authorized the expenditure of funds for its maintenance. We are not persuaded.

The township cites several cases to support the proposition that it must open a public road before the township is required to maintain the road. The cited cases, however, are inapposite. They address situations in which an individual claimed private ownership of a stretch of public road that traversed their property, or where the court was

9

otherwise weighing the competing rights of an individual and a municipality. *In re Maint. of Rd. Areas Shown on Plat of Suburban Estates*, 311 Minn. 446, 451, 250 N.W.2d 827, 831 (1977); *Village of Medford v. Wilson*, 304 Minn. 250, 252, 230 N.W.2d 458, 459 (1975); *Village of Newport v. Taylor*, 225 Minn. 299, 305, 30 N.W.2d 588, 592 (1948), *St. Paul & Duluth R.R. v. City of Duluth*, 73 Minn. 270, 275, 76 N.W. 35, 35 (1898); *Pierro v. City of Minneapolis*, 139 Minn. 394, 395–96, 166 N.W. 766, 766 (1918). None of these cases address whether a township has authority to decide when it will open and assume responsibility for a road that MnDOT deemed necessary as part of a trunk-highway-improvement project. The cited cases therefore do not lend support to the township's position.

Furthermore, with respect to the authorization of funds, the township is correct that Minn. Stat. § 164.02 (2014) provides a procedure by which a town may establish a town road. But it is not the exclusive procedure for the establishment of a town road. *See, e.g.*, Minn. Stat. §§ 161.16, 163.11 (2014). Minn. Stat. § 164.02, subd. 1, provides that town roads shall be maintained by the town. *See also Huver v. Opatz*, 392 N.W.2d 237, 239 (Minn. 1986) ("A township has a common law duty to maintain that portion of the road within its territorial boundaries in a safe condition."). Accordingly, under Minnesota law, the township is responsible for maintaining Hanlon Drive.

### D E C I S I O N

Minn. Stat. § 161.16, subd. 4(b), is unambiguous and does not contain a requirement that a county, city, or other political subdivision accept a conveyance of a town road that is a necessary part of an upgrade to the trunk highway system for the

10

conveyance to be effective. Furthermore, Hanlon Drive is not a cartway. Finally, the township is responsible for maintaining Hanlon Drive despite the fact that it did not open Hanlon Drive for public use and has not yet authorized the expenditure of funds for Hanlon Drive.

**Affirmed.**